UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>RAB 786 LLC, et al.,<br><br>            Defendants. | CASE NO. C23-0321JLR<br><br>ORDER |

## I.    INTRODUCTION

Before the court is Plaintiff GS Holistic, LLC's ("GS Holistic") motion for entry of default judgment against Defendants RAB 786 LLC d/b/a Xhale Gallery ("Xhale Gallery"), Nadeem Anjum, and Muhammad Jamil Anjum (together, "Defendants"). (Mot. (Dkt. # 12); *see* Prop. Judgment (Dkt. # 12-3).)  None of the Defendants have appeared in this action, and the Clerk has entered default against all Defendants.  (*See* Dkt.; Entry of Default (Dkt. # 10).)  The court has considered GS Holistic's motion, the materials it submitted in support of its motion, the relevant portions of the record, and the

ORDER - 1

governing law.  Being fully advised, the court GRANTS in part and DENIES in part GS Holistic's motion for entry of default judgment.

## II.     BACKGROUND

GS Holistic is a Delaware limited liability corporation ("LLC") that has its principal place of business in California.  (Compl. (Dkt. # 1) ¶ 4.)  It alleges that it is the owner of the "Stündenglass" trademark, has worked to distinguish the Stündenglass brand as "the premier manufacturer of glass infusers," and has devoted significant time and resources promoting and protecting its trademark.  (*Id.* ¶¶ 4, 8-10, 15.)  GS Holistic has registered the following trademarks:  (1) U.S. Trademark Registration No. 6,633,884 "for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 011"; (2) U.S. Trademark Registration No. 6,174,292 "for the design plus words mark 'S' and its logo in association with goods further identified in the registration in international class 034"; and (3) U.S. Trademark Registration No. 6,174,291 "for the standard character mark 'Stündenglass' in association with goods further identified in registration in international class 034" (together, the "Stündenglass Marks").  (*Id.* ¶ 11; *see also* Mot., Ex. A (screenshots of pages from the United States Patent and Trademark Office's Trademark Electronic Search System that describe each trademark).)  GS Holistic asserts that consumers are willing to pay more for "the recognized quality and innovation associated with the Stündenglass Marks."  (Compl. ¶ 21.)  Thus, genuine Stündenglass glass infusers are priced at $599.95, while non-Stündenglass infusers sell for between $199.00 and $600.00.  (*Id.*)

1    Defendant Xhale Gallery is a Washington corporation that has its principal place
2    of business in Washington. (*Id.* ¶ 5.) Defendants Nadeem Anjum and Muhammad Jamil
3    Anjum are owners of Xhale Gallery and are residents and citizens of Washington. (*Id.* at
4    1; *id.* ¶¶ 6-7.) GS Holistic asserts that Defendants sold counterfeit products bearing the
5    Stündenglass Marks. (*Id.* ¶¶ 25-28.) On December 8, 2022, according to GS Holistic, its
6    investigator visited Xhale Gallery's location; observed that the shop had "an excess" of
7    glass infusers that displayed the Stündenglass Marks; purchased a glass infuser "with a
8    Stündenglass Mark affixed to it" for $441.00; and determined the glass infuser was a
9    counterfeit product that displayed "the Infringing Marks." (*Id.* ¶ 30; *see also id.* ¶ 26
10   (defining the "Infringing Marks" as "reproductions, counterfeits, copies, and/or colorable
11   imitations of one or more of the Stündenglass Marks").)

12    GS Holistic filed its complaint on March 6, 2023. (*See id.* at 1.) It alleges claims
13   under the Lanham Act against both Defendants for counterfeiting and trademark
14   infringement in violation of 15 U.S.C. § 1114 and for false designation of origin and
15   unfair competition in violation of 15 U.S.C. § 1125(a). (*Id.* ¶¶ 52-69.) Among other
16   relief, it seeks damages, costs of suit, a permanent injunction prohibiting Defendants
17   from continuing to infringe its Stündenglass trademarks, and an order requiring
18   Defendants to deliver all infringing products to GS Holistic for destruction. (*Id.* at
19   12-14.)

20    GS Holistic served Nadeem Anjum and XHale Gallery on April 17, 2023; it
21   served Muhammad Jamil Anjum on April 21, 2023. (*See* Service Affs. (Dkt. ## 6-8).)
22   The Clerk entered default against all three Defendants on June 23, 2023. (Entry of

Default.) GS Holistic filed this motion for entry of default judgment on October 31, 2023. (Mot.)

### III.   ANALYSIS

Below, the court sets forth the relevant legal standard and then evaluates GS Holistic's motion for entry of default judgment.

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default judgment against a defaulting defendant upon the plaintiff's motion. Fed. R. Civ. P. 55(a), (b)(2). After default is entered, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Entry of default judgment is left to the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). After the court determines that default judgment is appropriate, it must then

determine the amount and character of the relief that should be awarded. *See TeleVideo*, 826 F.2d at 917-18.

**B.     Whether the *Eitel* Factors Favor Default Judgment**

The court preliminarily determines that default judgment is warranted in this case because, on balance, the *Eitel* factors weigh in favor of such judgment. The court discusses each factor in turn.

   1.     Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Without default judgment, GS Holistic will suffer prejudice because it will "be denied the right to judicial resolution" of its claims and will be "without other recourse for recovery." *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Thus, the first *Eitel* factor weighs in favor of entering default judgment.

   2.     Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors—the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint—are frequently analyzed together. *PepsiCo*, 238 F. Supp. 2d at 1175. For these two factors to weigh in favor of default judgment, the complaint's allegations must be sufficient to state a claim for relief. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). At the default judgment stage, the court "must take the well-pleaded factual allegations [in the complaint] as true" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

GS Holistic alleges claims for trademark counterfeiting and infringement under 15 U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C. § 1125(a). (Compl. ¶¶ 52-69.) The court reviews each in turn.

      a.    *Trademark Counterfeiting and Infringement*

To prove liability for trademark infringement, the trademark holder must demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive" consumers. *Reno Air Racing Ass'n., v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).

First, uncontested proof that the plaintiff has registered the mark is sufficient to establish ownership of a valid mark. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). Thus, because GS Holistic alleges that it registered the Stündenglass Marks, it satisfies the first element of trademark infringement for the purpose of default judgment. (Compl. ¶ 11.)

Second, "[l]ikelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a

different product identified by a similar mark." *KP Permanent Make-Up*, 408 F.3d at 608. Courts generally evaluate eight factors to determine whether confusion is likely: "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets." *Id.* Where a defendant uses a counterfeit mark, however, courts both within and outside the Ninth Circuit presume a likelihood of consumer confusion. *See Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a court need only determine that the items at issue are counterfeit and that the defendant distributed, offered for sale, or sold the items."). The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Here, GS Holistic alleges that its investigator purchased a glass infuser with a Stündenglass Mark "affixed" to it and determined that it was a counterfeit product that displayed the "the Infringing Marks." (Compl. ¶ 30.) GS Holistic further alleges that the "Infringing Marks" are "reproductions, counterfeits, copies and/or colorable imitations of one or more of the Stündenglass Marks." (*Id.* ¶ 26.) Accordingly, the court concludes that GS Holistic has sufficiently alleged that Defendants sold a product bearing a counterfeit mark and, as a result, there is a presumption of consumer confusion. *See*

*Coach, Inc.*, 2013 WL 5406220, at \*3.  Thus, because GS Holistic has demonstrated that it owns a valid mark and that Defendants' use of the mark is likely to cause consumer confusion, the court concludes that GS Holistic has sufficiently alleged its trademark counterfeiting and infringement claim.

     b.  *False Designation of Origin*

  To show liability for false designation of origin, the plaintiff must show that the defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).  As to the first two elements, GS Holistic alleges that Defendants sold (and thus, used in commerce) at least one glass infuser bearing at least one of its registered trademarks.  (Compl. ¶¶ 29-30.)  And the court concluded above that GS Holistic has plausibly alleged a likelihood of confusion resulting from Defendants' use of the trademarks.  Accordingly, GS Holistic has stated a false designation of origin claim.

  Because GS Holistic has demonstrated that its claims have substantive merit and that it has sufficiently alleged those claims in its complaint, the court concludes that the second and third *Eitel* factors weigh in favor of default judgment.

    3.  <u>Sum of Money at Stake</u>

  Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176.  Here, GS Holistic seeks (1) $150,000 in statutory damages—$50,000 per

Stündenglass trademark—for willful trademark counterfeiting under 15 U.S.C. § 1117(d) and (2) costs in the amount of $1,193.00. (*See* Mot. at 2.) The court concludes that the requested statutory damages and costs are not so unreasonable in relation to the conduct alleged in the complaint as to weigh against entry of default judgment.

### 4. Possibility of a Dispute over Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. Where, as here, the defendant has defaulted, the court must take all well-pleaded allegations in the complaint as true, except those related to damages. *TeleVideo*, 826 F.2d at 917-18; s*ee also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."). Thus, the court concludes there is little risk of dispute over material facts and the fifth *Eitel* factor weighs in favor of granting default judgment.

### 5. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the defendant's default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, GS Holistic has provided evidence that Defendants were properly served (*see* Service Affs.), and there is no evidence in the record that Defendants' failure to answer or respond is the result of excusable neglect. Accordingly, the court concludes that the sixth *Eitel* factor weighs in favor of default judgment.

//

//

6.  Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Where, as here, a defendant fails to appear or defend itself in action, however, the policy favoring decisions on the merits is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177. Therefore, the court concludes that the seventh *Eitel* factor does not preclude entry of default judgment.

In sum, because the *Eitel* factors weigh in favor of default judgment, the court concludes that entry of default judgment is warranted in favor of GS Holistic on its claims against Defendants.

**C. Requested Relief**

The court now turns to the issue of remedies. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the [complaint]." Fed. R. Civ. P. 54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). Defaulting defendants are not deemed to have admitted the facts alleged in the complaint concerning the amount of damages. *TeleVideo*, 826 F.2d at 917. Rather, the plaintiff "must 'prove up' the amount of damages that it is claiming." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash. LCR 55(b)(2).[1] By analogy, plaintiffs must also "prove up" their entitlement to other

---

[1] This court's Local Civil Rules require plaintiffs to support a motion for default judgment with:

> a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain and to any nonmonetary relief sought. [The] [p]laintiff shall provide a concise explanation of how all amounts were calculated, and shall support this

ORDER - 10

forms of relief, such as a permanent injunction. *See Gucci Am., Inc. v. Tyrrell–Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

GS Holistic requests statutory damages, litigation costs, injunctive relief, and destruction of the infringing products. (*See* Mot. at 11-14.) The court considers each remedy below.

### 1. Statutory Damages

Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages. 15 U.S.C. § 1117(c). GS Holistic has elected to seek statutory damages. (Mot. at 11-12; *see* Compl. at 12-13 (including statutory damages in its prayer for relief).)

The court has discretion to award statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the court finds that the trademark violation was willful, it may award up to $2,000,000 for each infringement. *Id.* § 1117(c)(2). "[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)). When determining the

---

explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought[.]

Local Rules W.D. Wash. LCR 55(b)(2).

appropriate amount of statutory damages to award on default judgment, courts consider whether the amount bears a "plausible relationship to [the p]laintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). That is, although a plaintiff in a trademark infringement suit is entitled to damages that will compensate and serve as a deterrent, "it is not entitled to a windfall." *Id.*

GS Holistic requests statutory damages of $50,000 for each of its registered trademarks, for a total of $150,000. (Mot. at 11-12.) GS Holistic's evidence of its actual damages caused by Defendants' trademark violations, however, is limited to allegations that its investigator observed "an excess of Glass Infusers which displayed" the Stündenglass Marks and purchased a single glass infuser with an unspecified Stündenglass Mark "affixed to it" for $606.58. (*See* Compl. ¶ 30.) GS Holistic contends that its chief executive officer's ("CEO") declaration establishes that $150,000 is "only a fraction of the actual losses to its business" caused by counterfeiters. (Mot. at 12.) That declaration, however, provides no explanation of how GS Holistic's CEO determined that the company's total U.S. sales would have quadrupled in 2021 if there were no counterfeit products in the market and it says absolutely nothing about the damages specifically caused by the Defendants in this case. (*See generally* 2d Folkerts Decl. (Dkt. # 14) ¶¶ 15-16.) The court is sympathetic to the difficulties GS Holistic faces in estimating actual damages with any degree of certainty without the benefit of Defendants' cooperation in discovery. (*See* Mot. at 12.) Without more evidence, however, the court cannot conclude that an award of $50,000 in statutory damages for

each of GS Holistic's three registered trademarks bears a "plausible relationship" to GS Holistic's actual damages. *Yelp Inc.*, 70 F. Supp. 3d at 1102.

Because GS Holistic alleges only that the glass infuser its investigator purchased had "a Stündenglass Mark affixed to it" (Compl. ¶ 29), the court concludes that GS Holistic is entitled to statutory damages based on Defendants' conduct with respect to only one trademark. The court further concludes, in its discretion, that an award of $5,000 for one trademark violation will serve the compensatory, penal, and deterrent purposes of statutory damages without resulting in an undue windfall for GS Holistic. This amount equates to more than ten times the price of the allegedly infringing glass infuser purchased by GS Holistic's investigator. (*See id.*) Accordingly, the court awards GS Holistic statutory damages of $5,000.

        2.      <u>Litigation Costs</u>

Under the Lanham Act, a plaintiff who establishes that a defendant has violated a trademark "shall be entitled, . . . subject to the principles of equity, to recover . . . the costs of the action." 15 U.S.C. § 1117(a). Here, GS Holistic seeks costs in the total amount of $1,193.00, consisting of the filing fee ($402.00), its process server fees ($285.00), and its investigator's fees ($506.00). (Mot. at 13 (citing Harris Decl. (Dkt. # 15) ¶ 6); *see* Compl. at 12-13 (including costs of suit in its prayer for relief).) The court awards GS Holistic its filing fee and process server fees because these are costs that are routinely awarded in Lanham Act cases. GS Holistic has not, however, cited any authority for the proposition that its investigator's fees are recognized "costs of the

action" under the Lanham Act.  (*See generally* Mot.)  Therefore, the court awards GS Holistic costs in the amount of $687.00.

       3.     <u>Injunctive Relief</u>

The Lanham Act empowers courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar language in considering a motion for permanent injunctive relief under the Patent Act).  The Lanham Act provides, in the case of a motion for a permanent injunction, that a "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [trademark] violation."  15 U.S.C. § 1116(a).

GS Holistic asks the court to enter the following permanent injunction enjoining Xhale Gallery, Nadeem Anjum, Muhammad Jamil Anjum, and "their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concern or participation with it" from:

> (a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit Stündenglass

   product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof; [and]

  (b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraph[] (a) above.

(Mot. at 13-14; *see also* Prop. Judgment.)

  The court declines to enter the requested permanent injunction. First, GS Holistic argues only that it is entitled to injunctive relief "[b]y the reasons explained in [its] Complaint." (Mot. at 13.) It does not address the factors a court must consider before entering a permanent injunction. (*See id.*); *see eBay Inc.*, 547 U.S. at 391. Second, the injunction GS Holistic seeks now is broader than the injunction outlined in its complaint, which does not include an injunction against "[a]ssisting, aiding or attempting to assist or aid" others against performing the actions listed in part (a) of the proposed injunction. (*Compare* Compl. at 13, *with* Prop. Judgment at 2.) Third, although GS Holistic's complaint describes the sale of one counterfeit Stündenglass glass infuser displaying one unspecified Stündenglass Mark, it requests a wider injunction relating to "the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product." (*Compare* Compl. ¶ 30, *with* Prop. Judgment at 2.) Finally, "every order granting an injunction" must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). GS Holistic's proposed order violates this rule by referring to "the counterfeit Stündenglass product identified in the complaint." (*See* Prop. Judgment at 2.)

For these reasons, the court denies GS Holistic's request that it enter a permanent injunction.

### 4. Destruction of Infringing Products

Finally, GS Holistic seeks an order directing Defendants, "at their cost, [to] deliver to [GS Holistic] for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptables, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks." (Mot. at 14; *see also* Prop. Judgment at 2.) The Lanham Act authorizes the court to issue an order directing the destruction of articles that infringe upon a trademark. 15 U.S.C. § 1118. Here, however, GS Holistic has not presented any argument or evidence supporting its entitlement to this relief, and—as with its request for a permanent injunction—its request for destruction of any article "bearing any of the Stündenglass Marks" is not supported by its investigator's purchase of a single glass infuser bearing an unspecified Stündenglass Mark. (*See* Mot. at 14; Compl. ¶ 30.) As a result, the court denies GS Holistic's request for an order directing the destruction of allegedly infringing products.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part GS Holistic's motion for default judgment (Dkt. # 12). Specifically, the court GRANTS GS Holistic's request for entry of default judgment against XHale Gallery, Nadeem Anjum, and Muhammad Jamil Anjum; AWARDS GS Holistic statutory damages in the amount of $5,000 and litigation costs in the amount of $687.00; and DENIES GS Holistic's

requests for entry of a permanent injunction and for an order directing the destruction of infringing products.

Dated this 6th day of November, 2023.

JAMES L. ROBART
United States District Judge